Kenneth N. Klee (State Bar No. 063372)
Thomas E. Patterson (State Bar No. 130723)
Daniel J. Bussel (State Bar No. 121939)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:  310-407-4000
Facsimile:  310-407-9090
Email:      kklee@ktbslaw.com
            tpatterson@ktbslaw.com
            dbussel@ktbslaw.com

Benjamin P. Smith (State Bar No. 197551)
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
Email:      bpsmith@morganlewis.com

*Attorneys for the J.T. Thorpe Settlement Trust and*
*Thorpe Insulation Company Asbestos Settlement Trust*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| In re<br><br>J.T. THORPE, INC.<br><br>and<br><br>THORPE INSULATION COMPANY,<br><br>Debtors. | Case No. 2:14-cv-03883-VAP<br><br>Related to Bankr. Case Nos. 2:02-bk-14216-BB and 2:07-bk-19271-BB (Case Closed) (Jointly Administered with Case No. 2:07-bk-20016-BB)<br><br>Related to Bankr. Adv. Case Nos. 2:12-ap-02182-BB and 2:12-ap-02183-BB |
| MICHAEL J. MANDELBROT and THE MANDELBROT LAW FIRM,<br><br>Appellants,<br><br>v.<br><br>J.T. THORPE SETTLEMENT TRUST and THORPE INSULATION COMPANY ASBESTOS SETTLEMENT TRUST,<br><br>Appellees. | **THE TRUSTS' OPPOSITION TO MANDELBROT'S MOTION TO STAY ENFORCEMENT OF JUDGMENT AND ORDER FOLLOWING TRIAL ON ADVERSARY COMPLAINTS AND MOTION FOR INSTRUCTIONS**<br><br>Date:   July 7, 2014<br>Time:   2:00 p.m.<br>Crtrm.: Hon. Virginia A. Phillips<br>        U.S. District Court<br>        3470 Twelfth Street<br>        Riverside, California<br>        Courtroom 2 |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# **TABLE OF CONTENTS**

**Page(s)**

I.  OVERVIEW ................................................................................. 3

II.  STANDARD OF REVIEW ......................................................... 9

III.  MANDELBROT FAILED TO SATISFY THE REQUIREMENTS
FOR A STAY PENDING APPEAL ........................................ 11

   A.  The Bankruptcy Court Did Not Abuse Its Discretion in Finding
that the Public Interest Precludes a Stay Pending Appeal ................... 11

   B.  The Bankruptcy Court Did Not Abuse Its Discretion In Finding
that Mandelbrot Cannot Demonstrate A Likelihood of Success
on the Merits. ....................................................................... 13

   C.  Mandelbrot Does Not Show That He Will Be Irreparably
Harmed or that the Balance of Harms Favors Granting a Stay. ........... 19

      1.  Mandelbrot Does Not Show Irreparable Harm. ........................ 19

      2.  Mandelbrot Ignores the Substantial Injury to the Trusts
and Their Beneficiaries If a Stay Is Issued. ............................. 20

IV.  CONCLUSION ........................................................................ 22

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia
    Commc'ns Corp.),*
    361 B.R. 337 (S.D.N.Y. 2007) .................................................................. 22

*In re Adelphia Commc'ns Corp.,*
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ....................................................... 12

*Amchem Prods. v. Windsor,*
    521 U.S. 591, 117 S. Ct. 2231 (1997) ......................................................... 4

*Bates v. Union Oil Co. of Cal.,*
    944 F.2d 647 (9th Cir. 1991) .................................................................... 11

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),*
    671 F.3d 1011 (9th Cir.) .......................................................................... 13

*Dowell v. Biosense Webster, Inc.,*
    102 Cal. Rptr. 3d 1, 179 Cal. App. 4th 564 (2009) .................................... 14

*Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC),*
    395 B.R. 113, 119 (S.D. Cal. 2008) ........................................................... 10

*Edwards v. Arthur Andersen LLP*
    189 P.3d 285, 44 Cal. 4th 937, 81 Cal. Rptr. 3d 282 (2008) ................ 13, 14

*FTC v. World Wide Factors, Ltd.,*
    882 F.2d 344 (9th Cir. 1989) .................................................................... 12

*Greaux v. Mermin (In re Marriage of Greaux),*
    167 Cal. Rptr. 3d 881, 223 Cal. App. 4th 1242 (2014) ............................... 14

*Haight v. Superior Court,*
    285 Cal. Rptr. 845, 234 Cal. App. 3d 963 (1991) ...................................... 17

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
    736 F.3d 1239 (9th Cir. 2013) .................................................................. 19

*Hilton v. Braunskill,*
    481 U.S. 770, 107 S. Ct. 2113 (1987) ........................................................ 11

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

*Howard v. Babcock*,
  863 P.2d 150, 6 Cal. 4th 409, 25 Cal. Rptr. 2d 80 (1993)............................ 16, 17

*Humane Soc'y v. Gutierrez*,
  558 F.3d 896 (9th Cir. 2009) ............................................................................ 11

*In re Kenny G. Enters., LLC*,
  2014 WL 1806891 (C.D. Cal. May 7, 2014)...................................................... 10

*Levy v. Cohen*,
  561 P.2d 252, 19 Cal. 3d 165, 137 Cal. Rptr. 162 (1977)................................. 18

*Lopez v. Heckler*,
  713 F.2d 1432, 1435-36 (9th Cir. 1983)............................................................ 10

*Ohanian v. Irwin (In re Irwin)*,
  338 B.R. 839, 844 (E.D. Cal. 2006) .................................................................. 10

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815, 119 S. Ct. 2295 (1999) ................................................................. 4

*Silguero v. Creteguard, Inc.*,
  113 Cal. Rptr. 3d 653, 187 Cal. App. 4th 60 (2010) ........................................ 14

*Stoll v. Gottleib*,
  305 U.S. 165, 59 S. Ct. 134 (1938) ................................................................... 18

*U.S. SEC v. Wilde*,
  2013 WL 2303761 (C.D. Cal. May 20, 2013)................................................... 11

*Winter v. N.R.D.C., Inc.*,
  555 U.S. 7, 129 S. Ct. 365 (2008) ....................................................... 10, 11, 19

**Statutes**

18 U.S.C. § 152................................................................................................... 6

11 U.S.C. § 524(g).....................................................................................*passim*

**Other Authorities**

ABA Formal Op. 93-371 .................................................................................. 16

ABA Formal Op. 95-394 .................................................................................. 16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1

ABA Model R. 5.6 .................................................................... 15, 16

California Business & Professions Code Section 16600 ...................................*passim*

California Rule of Professional Conduct 1-500(A) ...........................................*passim*

4 *Collier on Bankruptcy* ¶ 524.07 (Alan N. Resnick & Henry J.
     Sommer eds., 16th ed.) ........................................................... 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

J.T. Thorpe Settlement Trust and Thorpe Insulation Company Asbestos Settlement Trust (the "**Trusts**")[1] hereby oppose the motion [Dkt. No. 10] (the "**Motion**") of Michael J. Mandelbrot and the Mandelbrot Law Firm ("**Mandelbrot**") for a stay of the bankruptcy court's *Judgment in Adversary Proceedings*, RJN Ex. 3,[2] (the "**Judgment**") and *Order Following Trial on Adversary Complaints and Motion for Instructions*, RJN Ex. 2, (the "**Order Following Trial**"), pending Mandelbrot's appeal of the Judgment, the Order Following Trial, and the *Order Granting Motion to Enforce January 23, 2014 Stipulated Agreement*, RJN Ex. 1 (the "**Enforcement Order**") to this Court.

Mandelbrot is a California lawyer who represented asbestos claimants before the Trusts. Midway through a trial in which the Trusts presented voluminous evidence establishing that the Trusts had reasonably determined, after investigation, that Mandelbrot had engaged in a pattern of submitting unreliable evidence in support of those claims, Mandelbrot stipulated that the Trusts had acted reasonably in determining his unreliability and that he would file no further claims. Thereafter, he purported to renege on that on-the-record stipulation. He now appeals the written orders embodying his oral stipulation and the order enforcing his oral stipulation.

The Trusts' court-approved trust distribution procedures ("**TDPs**") authorize them to decline to accept claims filed by lawyers who are found to be "unreliable"

---

[1]   Unless otherwise required by the context, statutory references are to title 11 of the United States Code (the "**Bankruptcy Code**"). As discussed *infra* at Section I, the Trusts were created pursuant to § 524(g) as successors to the mass asbestos debtors whose asbestos liabilities they assumed. Those debtors were **not** affiliates of each other, despite the similarity of their names. The cases were filed years apart, were separately administered, and the two § 524(g) plans of reorganization were separately affirmed by District Judge James Otero (J.T. Thorpe, Inc.) and District Judge Dale Fischer (Thorpe Insulation Co.), respectively.

[2]   References to exhibits or page numbers with an "RJN" prefix are to the Request for Judicial Notice filed concurrently herewith.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    and who engage in a pattern or practice of submitting unreliable evidence in support

2    of those claims.  Following an eighteen-month long investigation into Mandelbrot's

3    claim-filing practices, the Trusts made that finding with respect to Mandelbrot and

4    terminated his claim-filing privileges.  During the investigation, in the face of

5    Mandelbrot's threats of litigation and assertions of Trust misconduct, the Trusts

6    commenced proceedings before their supervising bankruptcy court to confirm the

7    reasonableness of the Trusts' decision to investigate Mandelbrot.  Upon making

8    their findings, the Trusts moved for instructions from the bankruptcy court to

9    confirm that the investigation, and the findings and remedy with respect to

10   Mandelbrot's unreliability, were reasonable and authorized under the TDPs.

11          Following extensive discovery, the bankruptcy court conducted a trial on

12   these matters.  There, the Trusts adduced evidence not only of unreliability on

13   Mandelbrot's part, but outright misconduct.  Following the bulk of the Trusts' case

14   in chief but before Mandelbrot himself testified, the parties read detailed stipulations

15   into the record to which all parties, including both Mandelbrot and his counsel,

16   assented.  The stipulations amounted to a confession of judgment, with Mandelbrot

17   withdrawing his objections and defenses, stipulating that the Trusts had acted

18   reasonably in making their findings as to his unreliability, and further stipulating to

19   transition his Trust claims to other counsel and not to file further claims against the

20   Trusts and two other trusts that share common claim-processing facilities.

21          On that basis, the bankruptcy court terminated the trial.  Subsequently,

22   however, Mandelbrot purported to renege on the stipulation.  The bankruptcy court

23   declined to allow Mandelbrot to withdraw from the stipulation and, following

24   further motion practice, issued the orders and findings contemplated by the

25   stipulations read into the record, and a separate order enforcing the stipulations.

26          Mandelbrot appealed the orders, and sought a stay from the bankruptcy court

27   of the orders, but not of the Enforcement Order.  The bankruptcy court denied that

28   request for stay, a decision the Motion now seeks to reverse.

# I.

## OVERVIEW

This appeal arises out of the successful § 524(g) chapter 11 reorganizations of two unrelated firms—J.T. Thorpe Company and Thorpe Insulation Company—each of which was independently subject to thousands of claims and demands for asbestos-related injuries, including mesothelioma, lung cancers, and other respiratory illnesses associated with the inhalation of asbestos fibers. Those chapter 11 cases were resolved by channeling each debtor's present and future asbestos liabilities to its respective Trust and funding those Trusts in compliance with § 524(g).[3] The Trusts are now solely responsible for administering the asbestos liabilities of these former debtors. They operate under the authority of final bankruptcy court confirmation orders entered and affirmed in the underlying chapter 11 cases and pursuant to court-approved TDPs.[4]

---

[3] Unlike other chapter 11 plan confirmation orders, § 524(g)(3)(A) requires that 524(g) confirmation orders receive District Court review before becoming effective. The J.T. Thorpe, Inc. plan became fully effective after the required affirmance of the confirmation order by District Judge Otero on June 29, 2006. *See Notice of Occurrence of Effective Date*, ECF No. 1440, Case No. 2:02-bk-14216-BB (Bankr. C.D. Cal. July 6, 2006). The Thorpe Insulation Co. plan became fully effective after the required affirmance of the confirmation order by District Judge Fischer on the Confirmation Remand Effective Date of July 9, 2013. *See Notice of (1) Effective Date and Confirmation Remand Effective Date & etc.*, ECF No. 3439, Case No. 2:07-bk-19271-BB (Bankr. C.D. Cal. July 9, 2013).

[4] In order to realize economies of scope and scale, and as authorized by their respective TDP, the two Appellee Trusts, and two other § 524(g) trusts, the Western Asbestos Settlement Trust (the "**Western Trust**"), and the Plant Insulation Settlement Trust ("**Plant Trust**"), have common trustees and asbestos-claims processing personnel and facilities. *See* RJN Ex. 4, at FOF ¶ 6. The Western Trust and the Plant Trust were created as successors to § 524(g) debtors under chapter 11 plan confirmation orders entered in the Northern District of California.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

The long latency period for asbestos-related disease makes mass-asbestos liability unique.  Millions of Americans have been exposed to asbestos.  Those exposed may not manifest injury for many decades.  The long latency period presents a challenge for businesses with significant asbestos liabilities.  Apart from chapter 11, no legal mechanism exists for businesses with asbestos liabilities to comprehensively resolve their future and indirect asbestos-related liability.  Attempts to resolve asbestos liabilities through non-bankruptcy class actions have proven unworkable. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821, 119 S. Ct. 2295, 2302 (1999); *Amchem Prods. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250 (1997).  The only non-bankruptcy alternative is individual trials of thousands of cases brought over decades.  Case-by-case resolution burdens the courts, is costly to claimants, insurers, and businesses, impairs affected businesses' access to capital and trade relations, and is unfair to claimants who manifest illness after a long latency when fewer assets remain to satisfy claims.

Congress enacted § 524(g) to address these problems.  This statute, applicable only in mass-asbestos chapter 11 cases, codifies the basic framework developed in the *Johns-Manville* case thirty years ago:  Debtors, their related parties, and settling insurers may, in exchange for contributing to a trust dedicated to the resolution and payment of asbestos claims, obtain comprehensive protection from all present and future asbestos-related liability.  4 *Collier on Bankruptcy* ¶ 524.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Section 524(g) places numerous special conditions on this relief (in addition to all the usual plan confirmation requirements) for the protection of present and future asbestos claimants.  *Id.* at ¶ 524.07[2].  Among the requirements are that the plan create a statutory trust that assumes the debtor's asbestos liability and that equitably distributes the funds contributed to it to present and future claimants.  *Id*. Section 524(g) specifies that

4

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1       the trust … operate through mechanisms such as structured, periodic, or

2   supplemental payments, pro rata distributions, matrices, or periodic

3   review of estimates of the numbers and values of present claims and

4   future demands, or other comparable mechanisms, that provide

5   reasonable assurance that the trust will value, and be in a financial

6   position to pay, present claims and future demands that involve similar

7   claims in substantially the same manner.

8   11 U.S.C. § 524(g)(2)(B)(ii)(V).

9       To implement this directive, the TDPs establish streamlined claim resolution

10  procedures that minimize the expense of litigation by, among other things,

11  liberalizing the rules of evidence and allowing claimants to proceed without counsel.

12  But in so doing, the TDPs necessarily require claimants and their representatives to

13  submit reliable information that supports their right to compensation.

14      Mr. Mandelbrot is a California attorney who has filed numerous claims for

15  compensation of asbestos-related injuries against the Trusts and the Western Trust

16  on behalf of various individual clients.

17      Over the course of a year and a half, the Trusts audited claims filed by

18  Mandelbrot.  Mandelbrot was advised of the audit in late 2011, but did not cooperate

19  with the Trusts in conducting the audit.  After Mandelbrot threatened litigation if the

20  Trusts continued the audit, the Trusts commenced an adversary proceeding in the

21  bankruptcy court seeking a declaration that the claim audits were appropriate and

22  authorized.  RJN Ex. 4, at FOF ¶ 7-9.

23      On May 24, 2013, the Trusts advised Mandelbrot that they had determined

24  through the audit that he was "unreliable" within the meaning of the TDPs and that

25  he had engaged in a pattern of filing "unreliable evidence" in support of those

26

27

28

1    claims.   RJN Ex. 4, at FOF ¶ 11; RJN Ex. 5.[5]   The Trusts then moved the

2    bankruptcy court for instructions based on the audits.  *See* RJN Ex. 4, at FOF ¶ 12.

3          The motions and adversary proceedings were ultimately joined and set for

4    trial in January 2014.

5           In the midst of trial, after the bulk of the Trusts' case in chief but before

6    Mandelbrot was to testify, Mandelbrot agreed to a detailed set of stipulations that

7    were read into the record.   Trial Tr. 2:9-16:15, Jan. 23, 2014; RJN Ex. 4, at FOF

8    ¶ 3 a–m.  Mandelbrot stipulated that he would file no new claims against the Trusts,

9

10

11   [5]   *See* Trust Distribution Procedures for the Trusts and for the Western Trust
     § 5.7(a); Trust Distribution Procedures for the Plant Trust § 5.8(a).  Section 5.7(a) of
12   the TDPs of the Trusts and the Western Trust provides:

13       The Trust with consent of the TAC [the Trust Advisory Committee]
         and Futures Representative may develop methods for auditing the
14       reliability of evidence reasonably related to the value of the claim,
         including additional reading of x-rays and verification of pulmonary
15       function tests, as well as the reliability of evidence of exposure to
         asbestos,   including   exposure   to   asbestos-containing   products
16       manufactured or distributed by Thorpe, and requesting from claimants
         or other Trusts, claims materials submitted to other Trusts.  ***In the***
17       ***event that the Trust reasonably determines that any unreliable***
         ***individual or entity has engaged in a pattern or practice of providing***
18       ***unreliable medical or other evidence to the Trust, it may decline to***
         ***accept additional evidence from such provider in the future.  Further,***
19       ***in the event that an audit reveals that fraudulent information has***
         ***been provided to the Trust, the Trust may penalize any responsible***
20       ***claimant or claimant's attorney by disallowing the related Trust***
         ***Claim or by other means*** including, but not limited to, requiring the
21       claimant or attorney submitting the fraudulent information to pay the
         costs associated with the audit and any future related audit or audits,
22       reordering the priority of payment of all affected claimants' Trust
         Claims, raising the level of scrutiny of additional information submitted
23       from the medical facility or other source, refusing to accept additional
         evidence from the same, seeking the prosecution of the claimant or
24       claimant's attorney for presenting a fraudulent claim in violation of 18
         U.S.C. § 152, and seeking Rule 11 sanctions.

25   Trust Distribution Procedures for the Trusts and for the Western Trust § 5.7(a)
26   (emphasis added); *see, e.g.*, RJN Ex. 9.   The Plant Trust's Trust Distribution
     Procedures contain substantially the same language as the emphasized language
27   above, in that document's section 5.8(a).

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

the Western Trust, and the Plant Trust and that he would transfer his current clients to new counsel so they could pursue their claims or receive future payments. *Id.*

On the basis of the evidence that the Court had to that point heard and the stipularions, the bankruptcy court found that the Trusts and the Western Trust had reasonably determined that Mandelbrot "engaged in a pattern and practice of filing unreliable evidence in support of claims filed with the [Trusts]." *See* RJN Ex. 2 ¶ 9. Specifically, the bankruptcy court found:

- "Mandelbrot agreed that the J.T. Thorpe Trust's, the Thorpe Insulation Trust's and the Western Trust's determinations stated in the May 24th letter, including the determination by all three trusts that Mandelbrot, the person and the firm, are unreliable and with respect to the J.T. Thorpe Trust and Thorpe Insulation Trusts specifically, have engaged in a pattern and practice of filing unreliable evidence and support claims filed with those two trusts, are reasonable in light of the evidence assessed in connection with the audit."   RJN Ex. 4, at FOF ¶ 3(g).

- "Mandelbrot agreed that the remedy imposed by the J.T. Thorpe Trust and the Thorpe Insulation Trust in the May 24th letter providing for the disallowance of all further evidentiary submissions by Mandelbrot is authorized under the Trust Distribution Procedures of each trust, and is reasonable in light of the Trusts' audit and investigative findings." *Id.* ¶ 3(h).

- "Mandelbrot agreed that the investigation of Mandelbrot – by the J.T. Thorpe Trust, the Thorpe Insulation Trust and the Western Trust – and the determinations and the remedy imposed were reasonable, not based upon improper interpretations of the terms of the three trusts, were and are consistent with the trusts' fiduciary duties, were conducted pursuant

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

to a valid trust purpose, were not done in bad faith and were not an abuse of discretion." *Id.* ¶ 3(i).

The bankruptcy court later observed that the matters to which Mandelbrot stipulated were "factual findings which I would have made on my own, based on the record as the state that it was …. factual findings that weren't simply because of the stipulations between the parties, but also consistent with the evidence that I had heard." RJN Ex. 7, at 62:13-63:1.

After Mandelbrot subsequently tried to renege on the stipulations, RJN Ex. 4, at FOF ¶ 19, the bankruptcy court issued the three orders appealed from implementing and enforcing the stipulations.

In seeking a stay pending appeal from the bankruptcy court, Mandelbrot asserted that the gravamen of his appeal is that, while the Trusts may have had the power to decline to accept claims from him based on the determinations of unreliability, his *agreement* not to file claims violates the public policy of the State of California, as expressed in California Business & Professions Code Section 16600 ("**Section 16600**") and California Rule of Professional Conduct 1-500(A) ("**Rule 1-500**").  But neither the statute, which expresses a public policy against covenants not to compete, nor the rule, which expresses a public policy against tying the resolution of a client's claim to a lawyer's agreement to restrict practice, applies where a lawyer, under threat of sanction, voluntarily stipulates to the very sanction that was sought to be imposed.

The relief the court ordered and to which Mandelbrot assented is designed to protect the integrity of the Trusts', the Western Trust's, and the Plant Trust's internal processes.  These processes rely heavily on the integrity and reliability of claims submissions and specifically authorize the Trusts to protect themselves from a known source of claims based on unreliable and potentially fraudulent evidence. The Trusts are not in competition with Mandelbrot and do not seek to enforce any

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   covenant not to compete against Mandelbrot; they simply do not want to process

2   claims from a source that they know to be unreliable.

3       Nor does the stipulation impermissibly link the resolution of any claim

4   against the Trusts to a restriction on the claimant's attorney's future practice: the

5   Trusts' claim against Mandelbrot was based on his misconduct in presenting

6   unreliable evidence to them.  No public policy of the State of California prevents

7   Mandelbrot from consensually resolving the Trusts' dispute regarding his *own*

8   misconduct through a stipulation approved by the Trusts' supervising court that

9   prevents him from continuing to represent claimants before the Trusts, the Western

10  Trust, and the Plant Trust in the future.

11      No stay pending appeal should issue given the weakness of Mandelbrot's

12  legal argument and its negligible probability of success.  Even if Mandelbrot had

13  tendered a substantial issue on appeal, however, the public interest strongly favors

14  allowing the Trusts to process claims from Mandelbrot clients solely on the basis of

15  evidence tendered by untainted representatives of those claimants pending the

16  resolution of this dispute over the terms of the Mandelbrot stipulation.  Accordingly,

17  as the bankruptcy court found, Mandelbrot fails to meet the criteria required for

18  issuance of a stay pending appeal and the Motion should be denied.

19  ## II.

20  ## STANDARD OF REVIEW

21      Following briefing on a fully noticed basis and a hearing in the bankruptcy

22  court, *see* RJN Ex. 7,[6] on June 4, 2014, the bankruptcy court entered its order

23  denying Mandelbrot a stay pending this appeal.  RJN Ex. 8.

24

25  _____

26  [6]  In the course of this Hearing, Mandelbrot, appearing *pro se*, made extended,
    unsupported, and defamatory claims of an ever-widening conspiracy among

27  opposing counsel, their present and former law firms, Bankruptcy Judge Bluebond,

28  other asbestos claimant lawyers, various not-for-profit professional organizations,
    *(FOOTNOTE CONTINUED)*

Mandelbrot introduces no new evidence or argument in support of his renewed Motion for stay in this Court.  Although Mandelbrot seeks *de novo* review of the bankruptcy court's denial of the stay pending appeal solely on the record below, Motion at 2-4, the proper standard of review in this matter is limited to whether the bankruptcy court abused its discretion in denying Mandelbrot's motion for stay pending appeal.  *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 844 (E.D. Cal. 2006) ("When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion.") (internal quotation omitted); *accord In re Kenny G. Enters., LLC*, 2014 WL 1806891, at *1 (C.D. Cal. May 7, 2014) ("After a bankruptcy court denies a motion to stay, the district court may only review the denial for abuse of discretion.") (citing *Irwin*, 338 B.R. at 847); *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC)*, 395 B.R. 113, 119 (S.D. Cal. 2008) (where a bankruptcy court has denied a stay, "the appellate court's review is limited to a simple determination of whether the bankruptcy court abused its discretion") (citing *Irwin*, 338 B.R. at 844); *see also Lopez v. Heckler*, 713 F.2d 1432, 1435-36 (9th Cir. 1983) (standard of review for stay pending appeal is similar to that for a preliminary injunction, which "will only be reversed if the lower court abused its discretion or based its decision upon erroneous legal premises") (internal quotation omitted); *cf. United States v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 839 (9th Cir. 2002) ("A district court's order regarding preliminary injunctive relief is subject to limited review.").

The Motion does not (and could not consistent with the record) contend that the bankruptcy court abused its discretion in denying the stay.  As the bankruptcy court recognized, under *Winter v. N.R.D.C., Inc.*, 555 U.S. 7, 20-22, 129 S. Ct. 365,

---

the Trustees of the Trusts, and the Futures Representative, the Hon. Charles Renfrew (Ret.) and his counsel.  RJN Ex. 7 at 80:7-85:15, 86:23-95:1.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

374 (2008), Mandelbrot must independently demonstrate that each of four factors favors a stay pending appeal: (1) a strong likelihood of success on the merits of his appeal; (2) irreparable injury to the appellant absent a stay; (3) lack of substantial injury to the other parties resulting from a stay; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119 (1987); *Humane Soc'y v. Gutierrez*, 558 F.3d 896, 896-97 (9th Cir. 2009) (citing *Winter* as requiring that all four factors be met for the issuance of a stay pending appeal); *U.S. SEC v. Wilde*, 2013 WL 2303761, at *5 (C.D. Cal. May 20, 2013) (factors considered for stay pending appeal are substantially the same as those for a preliminary injunction).

Applying this standard, the bankruptcy court properly denied a stay when it found that, without regard to the balance of harms, Mandelbrot had failed to establish two of the required factors. Specifically, the bankruptcy court found that, in light of the Trusts' findings and the evidence the court heard with respect to Mandelbrot's conduct in filing claims, a stay pending appeal would not be consistent with the public interest. The court also found that Mandelbrot was not likely to succeed on appeal.

Trial court decisions reviewed for abuse of discretion are not disturbed absent "a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 651 (9th Cir. 1991) (internal quotation omitted).

### III.

### MANDELBROT FAILED TO SATISFY THE REQUIREMENTS FOR A STAY PENDING APPEAL

**A.  The Bankruptcy Court Did Not Abuse Its Discretion in Finding that the Public Interest Precludes a Stay Pending Appeal**

The bankruptcy court properly determined that the public interest precludes issuance of a stay in this case.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

"The public interest requires bankruptcy courts to consider the good of the case as a whole …. [T]he public interest cannot tolerate any scenario under which private agendas can thwart the maximization of value for all." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007); *see also FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater effect.").

Section 524(g) was specifically enacted to address the crushing social problems of asbestos disease and asbestos litigation. To that end, the 524(g) plans establishing the Trusts address a public problem as well as the individual claimants' private interests in obtaining just compensation for their injuries. Thus, the implementation of the Order Following Trial and the Judgment, both directed at ensuring the integrity of the Trusts' administration of asbestos claims resolved pursuant to section 524(g), is infused with the public interest. As the Ninth Circuit noted in rejecting the demand of Continental Insurance Company that it be permitted to arbitrate certain claims arising under a prepetition settlement agreement in the *Thorpe Insulation* case, the bankruptcy court has a special role in these matters:

> The purpose of § 524(g) is to consolidate a debtor's asbestos-related assets and liabilities into a single trust for the benefit of asbestos claimants. *See* H.R. Rep. 103-835, at 46-48. Congress intended that the trust/injunction mechanism be "available for use by any asbestos company facing … overwhelming liability." *See id.* at 48. Congress tasked bankruptcy courts with ensuring that § 524(g)'s "high standards" are met and gave them authority to implement and supervise this unique procedure. *See id.* at 47. A claim based on a debtor's efforts to seek for itself and third parties the protections of § 524(g) implicates and tests the efficacy of the provision's underlying policies.

1
2
3
4

> Because Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract.

5
6

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1022 (9th Cir. 2012), *cert. denied* 133 S. Ct. 119 (2012).

7
8
9
10
11
12
13
14
15

Vindicating the bankruptcy court's supervisory authority over administration of the Trusts so as to ensure the integrity of their claim-processing during the interim period while appeal pends is not only appropriate based on the merits of this appeal and the balance of private harms among appellant, appellees, and third parties implicated by a stay, but also furthers the public interest in the proper administration of mass-asbestos trusts created under bankruptcy court authority. Compelling the Trusts to continue to accept claims from a lawyer with an established record of filing unreliable evidence in support of his client's claims would undermine the public interest.

16
17

**B.     The Bankruptcy Court Did Not Abuse Its Discretion In Finding that Mandelbrot Cannot Demonstrate A Likelihood of Success on the Merits.**

18
19
20
21

Mandelbrot argued below that his appeal centers on the contention that the stipulation preventing him from representing asbestos claimants before the Trusts violates Section 16600 and  Rule 1-500(A) and is therefore not legally enforceable. Neither claim has any merit.

22
23
24

Section 16600,[7] originally enacted in 1872, expresses California's long-standing pro-competition policy, favoring both open competition and employee mobility.  *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 44 Cal. 4th 937, 81 Cal.

25

26
27
28

[7]   Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600 (Deering 2014).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Rptr. 3d 282 (2008).  It renders covenants not to compete by employees, even those that might be enforceable in other jurisdictions under a rule of reason, unenforceable.  *Id.* at 290-92 (reviewing the evolution of California's treatment of covenants not to compete); *id.* at 297 (holding noncompetition agreement invalid).

But that policy, Section 16600, and *Edwards* have nothing to do with this case.  The Trusts never employed Mandelbrot and are not in competition with him.[8]  Mandelbrot did not agree not to compete with the Trusts, and the Trusts are not attempting to enforce a non-competition covenant.  Section 16600 cannot be read to require anyone to continue to deal with another's representative who is known to be unreliable simply because refusing to do so would adversely affect that representative's livelihood or trade.  Section 16600 does not privilege those who engage in misconduct and develop bad reputations to coerce others to continue to deal with them on pro-competition grounds.  No California case has ever read Section 16600 to require anything along those lines.  Mandelbrot cites no authority in support of such an absurd extension of Section 16600.

---

[8]  The focus of Section 16600 is on employment and business competition.  *See Edwards*, 189 P.3d 285 at 291-92 (noting the "consistent" focus of California courts on Section 16600's "settled legislative policy in favor of open competition and employee mobility" and finding invalid a noncompetition agreement an employee had signed upon employment); *see also Silguero v. Creteguard, Inc.*, 113 Cal. Rptr. 3d 653, 661, 187 Cal. App. 4th 60, 70 (2010) (sustaining a wrongful termination claim based on Section 16600 where employee was terminated due to a noncompetition agreement with a former employer); *Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1, 3, 9, 179 Cal. App. 4th 564, 567-68, 574 (2009) (noting the "interests of the employee in his own mobility and betterment" are "paramount" to the "competitive business interests of the employers" and finding invalid certain "Employee Secrecy, Non-Competition and Non-Solicitation Agreement[s]") (internal quotation omitted); *cf. Greaux v. Mermin (In re Marriage of Greaux)*, 167 Cal. Rptr. 3d 881, 891, 223 Cal. App. 4th 1242, 1253 (2014) (holding that Section 16600 does not prevent the issuance of a noncompetition order).

Similarly, the policy of California Rule of Professional Conduct 1-500(A)[9] is in no way implicated by the facts of this case. Rule 1-500(A) is directed at two specific situations, neither of which resembles this case.

First, it prohibits law firms from extracting covenants not to compete in the future from attorneys that are members of the firm or employed by it. As such, it is simply a special statement of the pro-competitive policy embodied more generally in Section 16600. That policy is not implicated by barring Mandelbrot from filing claims with the Trusts, the Western Trust, or the Plant Trust pursuant to the terms of the stipulation. This is not a covenant not to compete case.

Second, Rule 1-500(A), like its analogue ABA Model Rule 5.6(b)[10] that is in force in many other jurisdictions, also embodies a policy that prohibits settlements

---

[9] California Rule of Professional Conduct 1-500 provides:

(A) A member shall not be a party to or participate in offering or making an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to practice law, except that this rule shall not prohibit such an agreement which:

(1) Is a part of an employment, shareholders', or partnership agreement among members provided the restrictive agreement does not survive the termination of the employment, shareholder, or partnership relationship; or

(2) Requires payments to a member upon the member's retirement from the practice of law; or

(3) Is authorized by Business and Professions Code sections 6092.5 subdivision (i), or 6093.

(B) A member shall not be a party to or participate in offering or making an agreement which precludes the reporting of a violation of these rules.

Cal. R. Prof'l Cond. 1-500.

[10] ABA Model Rule 5.6 provides:

A lawyer shall not participate in offering or making:

(a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

ABA Model R. 5.6. The California Supreme Court has noted that Rule 1-500 is based on the predecessor to ABA Model Rule 5.6 and that the ABA Model Rules

*(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  that contain an extraneous term restricting the practice of one of the parties' lawyers.

2  ABA Formal Opinion 93-371 explains why:

> 3  First, permitting such agreements restricts the access of the public to
>
> 4  lawyers who, by virtue of their background and experience, might be
>
> 5  the very best available talent to represent these individuals.  Second, the
>
> 6  use of such agreements may provide clients with rewards that bear less
>
> 7  relationship to the merits of their claims than they do to the desire of
>
> 8  the defendant to "buy off" plaintiff's counsel.  Third, the offering of
>
> 9  such restrictive agreements places the plaintiff's lawyer in a situation
>
> 10  where there is conflict between the interests of present clients and those
>
> 11  of potential future clients.  While the Model Rules generally require
>
> 12  that the client's interests be put first, forcing a lawyer to give up future
>
> 13  representations may be asking too much, particularly in light of the
>
> 14  strong countervailing policy favoring the public's unfettered choice of
>
> 15  counsel.

16  ABA Formal Op. 93-371; *see also* State Bar of Cal. Formal Op. 1988-104 (same);

17  ABA Formal Op. 95-394 (extending Rule 5.6 to cover settlements between public

18  agencies and private parties).

19       This case, however, does not involve a settlement between two client parties

20  that restricts the practice of one of their lawyers.   It involves the stipulated

21  resolution of a dispute between the Trusts and a lawyer arising out of the lawyer's

22  own misconduct.  Moreover, none of the policies that support the prohibition on

23  settlements restricting the practice of one of the parties' lawyers apply here:

24       • The stipulation does not purport to deny the public the services of a

25         lawyer who has successfully prosecuted similar claims against a

---

27  may be helpful in interpreting the California rules.  *Howard v. Babcock*, 863 P.2d
    150, 155 n.5, 6 Cal. 4th 409, 418. n.5, 25 Cal. Rptr. 2d 80, 85 n.5 (1993).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

particular defendant in the past; it protects the public from one known to have engaged in a practice of filing claims on unreliable evidence that have led to additional scrutiny, audits, and expense.[11]

- The stipulation does not introduce conditions extraneous to the merits of the matter being settled into the settlement negotiations; it resolves the precise issue in dispute—Mandelbrot's conduct before the Trusts in prosecuting claims.[12]

- The stipulation does not subordinate Mandelbrot's own professional interests, or the interests of future clients, to those of a particular settling client; Mandelbrot's clients are not parties to this stipulation.

Accordingly, Mandelbrot's assent to the relief imposed by the Trusts in this case is not the type of agreement covered by Rule 1-500(A), and its enforcement does not implicate any of the policies supporting the Rule.[13] As with Section 16600,

---

[11] *See* RJN Ex. 4, at COL ¶ 7(a) ("[T]he J.T. Thorpe Trust's, the Thorpe Insulation Trust's, the Western Trust's determinations stated in the May 24th letter, including the trusts' determinations that Mandelbrot the person and the entity are unreliable, and have engaged in a pattern and practice of filing unreliable evidence in support of claims filed with the J.T. Thorpe Trust and the Thorpe Insulation Trust, are reasonable in light of the evidence assessed in connection with the audit."); Hrg. Tr. 57:16-58:7, Mar. 27, 2014 (highlighting Mr. Mandelbrot's "practice of submitting unreliable claims to the Trusts" as evidenced by "numerous instances" in which the Trusts found evidence contradicting claims Mr. Mandelbrot had submitted).

[12] *See* RJN Ex. 4, at FOF ¶¶ 6-9 (adversary proceedings brought in furtherance of the Trusts' audit and investigation of Mandelbrot and claims submitted by Mandelbrot).

[13] California courts reject an absolutist interpretation of Rule 1-500 and take into account all the relevant circumstances and competing interests in determining the proper scope and application of the Rule. *See Howard*, 863 P.2d at 156-59 (noting that the theoretical freedom of each lawyer to choose whom to represent and what kind of work to undertake, and the theoretical freedom of any client to select his or her attorney of choice, are "inconsistent with the reality that both freedoms are actually circumscribed"); *Haight v. Superior Court*, 285 Cal. Rptr. 845, 848, 234

*(FOOTNOTE CONTINUED)*

1    Mandelbrot can point to no authority applying the prohibition of Rule 1-500(A) in a

2    context even vaguely analogous to this case.[14]

3         Finally, Mandelbrot fails to acknowledge that the relief to which Mandelbrot

4    now claims he was wrong to stipulate derives from the TDPs themselves, which

5    expressly authorize the Trusts to prevent further claim-filing by an unreliable

6    individual or entity that, in each Trust's reasonable determination, has engaged in a

7    pattern or practice of providing unreliable evidence to the Trust.  *See supra* note 5

8    (quoting TDPs § 5.7(a)).  Mandelbrot's argument is thus a collateral attack on the

9    TDPs approved long ago in the chapter 11 plan confirmation orders that created the

10   Trusts.  To the extent California law is in any way inconsistent with the bankruptcy

11   court-approved TDPs (the Trusts do not believe it is), those objections should have

12   been raised at the time of confirmation and are no longer subject to attack on basic

13   principles of res judicata.  *Stoll v. Gottleib*, 305 U.S. 165, 170-71, 59 S. Ct. 134,

14   136-37 (1938); *Levy v. Cohen*, 561 P.2d 252, 19 Cal. 3d 165, 137 Cal. Rptr. 162

15   (1977).

16

17   _____

18   Cal. App. 3d 963, 968 (1991) (construing Rule 1-500 to reflect "a balance between

19   competing interests" and finding  that "the rule simply provides that an attorney may

20   not enter into an agreement to refrain altogether from the practice of law").

21   [14]  Mandelbrot mischaracterizes the record when he asserts that this Court's ruling

     in this case rejecting his public policy claim was based on a distinction between

22   prohibiting a lawyer from practicing and merely restricting his practice.  *See*

23   *Memorandum of Points and Authorities* in support of Mandelbrot's amended motion

     for a stay filed in the bankruptcy court [Bankr. Dkt. No. 245] (the "**Memorandum**

24   **in Support of Motion for Stay**") at 6-7.  In context, the Court, while noting the

25   limits of the practice restriction in the settlement, found Rule 1-500(A) inapplicable

     on the ground set forth in Part III.B, *supra*.  The ruling was that Rule 1-500(A) did

26   not apply to a settlement of the kind of claim – one based on the misconduct of the

27   very attorney subject to the restriction – before the Court.  Hrg. Tr. 10:21-14:13,

     Mar. 27, 2014.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

In short, Mandelbrot's assertions that the stipulation violates the public policy of the State of California as embodied in California Business & Professions Code Section 16600 and California Rule of Professional Conduct 1-500(A) are meritless and should be rejected on appeal. As Mandelbrot cannot show that his appeal is likely to succeed, or even that a serious legal question exists as to the merits of his arguments, the Motion should be denied.

**C.    Mandelbrot Does Not Show That He Will Be Irreparably Harmed or that the Balance of Harms Favors Granting a Stay.**

The bankruptcy court properly found it unnecessary to address the other two elements of the four-factor test for a stay pending appeal given Mandelbrot's inability to meet the likelihood of success and public interest elements. But those other elements also favor denial of the Motion.

**1.    Mandelbrot Does Not Show Irreparable Harm.**

Mandelbrot fails to point to any irreparable injury that he will suffer absent a stay pending appeal. Instead, he asserts that his clients, who have been given notice that they must find new counsel by July 23, 2014, will suffer irreparable harm because of a further delay in the processing of their claims necessitated by the substitution of counsel contemplated by the stipulation. Memorandum in Support of Motion for Stay at 9-10.[15] Mandelbrot's failure to identify any irreparable injury to him as appellant requires that the Motion be denied under the *Winter* standard. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249-1251 (9th Cir. 2013) (citing *Winter*, requiring evidence of a likelihood of irreparable harm, and

---

[15]  Mandelbrot's professed concern for mitigating delay suffered by his clients is disingenuous. The Trusts, not Mandelbrot, have been pushing for prompt substitution of counsel in order to mitigate delay, and Mandelbrot's motion for stay pending appeal, like his past practices in obstructing the Trusts' investigation of these claims would, if successful, only have the effect of further delaying the resolution of these claims.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    reversing the district court's issuance of a preliminary injunction for making
2    insufficient factual findings on the likelihood of irreparable harm and "collaps[ing]
3    the likelihood of success and the irreparable harm factors"), *petition for cert.*
4    *pending*, 82 U.S.L.W. 3636 (U.S. Apr. 17, 2014) (No. 13-1271).

5         In any event, there is no evidence that the holder of any valid claim now
6    represented by Mandelbrot will be prejudiced by promptly retaining new counsel of
7    his or her choice.  Claims presented by untainted attorneys will be processed more
8    efficiently than Mandelbrot-represented claims which, based on the results of the
9    Trusts' prior investigations and audits, may lack reliable supporting evidence.[16]

10        Prompt implementation of the Judgment and the Order Following Trial will
11   **benefit**, not harm, those of Mandelbrot's clients capable of presenting valid claims.
12   Indeed, Mandelbrot conceded as much when he agreed on the record to promptly
13   transfer all pending claims of currently clients to new counsel.  Hrg. Tr. 57:16-58:7,
14   Mar. 27, 2014.   Throughout the proceedings below, both the Trusts and the
15   bankruptcy court emphasized that protecting the interests of trust claimants was a
16   paramount consideration.  *See* RJN Ex. 7, at 64:12-66:4, 66:5-21.

17        **2.      Mandelbrot Ignores the Substantial Injury to the Trusts and Their**
18             **Beneficiaries If a Stay Is Issued.**

19        Even if Mandelbrot had established irreparable injury in his own right absent
20   a stay, any such injury would have to be weighed and balanced against the harm to
21   the Trusts, the Western Trust, the Plant Trust, and their respective beneficiaries, the
22   individual asbestos claimants, were a stay to issue.   Mandelbrot asserts that the

23   ─────────────────────

24   [16]  Mandelbrot mischaracterizes the record by asserting that his clients will suffer
25   harm absent the entry of a stay by losing their position in the distribution queue.
     Memorandum in Support of Motion for Stay at 10.  The Order Following Trial
26   provides that if those claims are timely refiled by untainted counsel, "no additional
27   filing fee will be assessed and the original date of filing will be preserved."  RJN
     Ex. 2 ¶ 7.
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    Trusts, the Western Trust, and the Plant Trust would suffer no substantial injury by

2    staying the Judgment and Order Following Trial.  But a stay could further delay the

3    Trusts', the Western Trust's, and the Plant Trust's administration of Mandelbrot-

4    represented claims, potentially for years through an extended course of appellate

5    proceedings while the Mandelbrot dispute remains on appeal.  Subjecting these

6    claims to further unnecessary delay would deny prompt compensation to deserving

7    individuals suffering from asbestos-related injuries or their survivors and prevent the

8    Trusts from efficiently weeding out meritless claims.

9    Additionally, if this Court were to stay the Judgment and the Order Following

10   Trial, the Trusts, the Western Trust, and the Plant Trust would be subject to

11   inconsistent and directly conflicting instructions, because Mandelbrot never sought a

12   stay of the Enforcement Order.  That Order provides, among other things, that the

13   stipulations are "valid and enforceable by the J.T. Thorpe Trust, Thorpe Trust,

14   Western Trust, and the Plant Trust" and that, in connection with the stipulations, the

15   Trusts and the Western Trust are to provide notice to claimants and counsel working

16   with Mandelbrot that their claims should be transferred to other counsel by July 23,

17   2014.  That notice has been sent and posted on the Trusts' and the Western Trust's

18   websites since April 16, 2014.  *See* RJN Ex. 6.

19   The victims of the conflicting instructions would be the beneficiaries of the

20   Trusts, who would incur additional expense and difficulty in asserting their claims.

21   Moreover, the Trusts would also be harmed, because the resulting confusion would

22   complicate the administration of claims.

23   These harms are not only substantial, they greatly outweigh any conceivable

24   harm to Mandelbrot that might be imagined.  In such circumstances a stay should be

25   denied even if the appellant could, as Mandelbrot cannot, establish a likelihood of

26   success on the merits.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

**IV.**

**CONCLUSION**

For the reasons set forth herein, this Court should not issue a stay pending appeal.[17]

---

[17] In the event this Court nonetheless rules that a stay should issue, the Trusts request that the Court entertain further proceedings to consider the appropriate amount of the required supersedeas bond. Under applicable law, entry of a stay pending appeal must be conditioned on the posting of a bond in an amount sufficient to compensate the appellees for all the harms caused by the delay occasioned by ultimately an unsuccessful appeal. *See ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 350-51 (S.D.N.Y. 2007). The Trusts expressly reserve their right to be heard in connection with the fixing of an appropriate bond should the Court determine to issue a stay pending appeal.

1    DATED: June 16, 2014                    Respectfully submitted,

2
                                             */s/ Daniel J. Bussel*
3                                            Daniel J. Bussel

4
                                             Kenneth N. Klee (State Bar No. 063372)
5                                            Thomas E. Patterson (State Bar No.
                                             130723)
6                                            Daniel J. Bussel (State Bar No. 121939)
7                                            KLEE, TUCHIN, BOGDANOFF &
                                             STERN LLP
8

9                                            *Appellate Counsel for the J.T. Thorpe*
                                             *Settlement Trust and Thorpe Insulation*
10                                           *Company Asbestos Settlement Trust*

11
                                             and
12

13                                           Benjamin P. Smith (State Bar No.
                                             197551)
14                                           MORGAN LEWIS & BOCKIUS LLP

15
                                             *Trial Counsel for the J.T. Thorpe*
16                                           *Settlement Trust and Thorpe Insulation*
                                             *Company Asbestos Settlement Trust*
17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000